MALCOLM KEST, Involuntary Plaintiff-Appellant, and MICHAEL PALAZZOLO, Involuntary Plaintiff, and AINA O KIPAHULU ASSOCIATION, a nonprofit Hawaii corporation, Plaintiff, *v.* HANA RANCH, INC., a Delaware corporation, Defendant-Appellee, and JOHN DOES 1-10, Defendants

NO. 13920

(CIVIL NO. 3873(1))

JANUARY 31, 1990

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Malcolm Kest (Kest), an involuntary plaintiff in an action commenced by plaintiff Aina O Kipahulu Association (the Association), appeals from the Second Circuit Court's summary judgment in favor of defendant Hana Ranch, Inc. (Hana Ranch) adjudicating certain claims alleged in his complaint. Kest contends that those claims were not time-barred. We hold that those claims did not "relate back" to the date of the Association's original complaint under Hawaii Rules of Civil Procedure (HRCP) Rule 15(c). Accordingly, we affirm the summary judgment.

I.

On September 18, 1978, the Association, a nonprofit Hawaii corporation, filed a complaint against Hana Ranch. The six-count complaint contains 36 paragraphs. The first eleven paragraphs are introductory in nature and the first paragraph in Count I is designated paragraph 12. In the introductory paragraphs, the Association alleges that (1) Hana Ranch was the owner and subdivider of the Aina O Kipahulu Subdivision (the Subdivision) in Kipahulu, Maui; (2) the members of the Association are the owners of the Subdivision lots;[1] (3) Hana Ranch "constructed an on-site and off-site water supply system consisting of water pipelines, water storage tanks, and related facilities, for the purpose of providing domestic water to lots within the Subdivision[,]" Record, Vol. 1 at 6; (4) the off-site water pipeline crosses "parcels of land owned by the State of Hawaii, the Nature Conservancy, the United States, Jean McCaughey, and possibly others[,]" *Id.* at 7; (5) by "Agreement to Transfer Water System," dated April 28, 1973 (the Agreement), Hana Ranch transferred the water system to the Association; (6) although the Agreement grants the Association an irrevocable license to maintain the off-site portion of the water system on land owned by Hana Ranch, the off-site portion of the water system is not located on land owned by Hana Ranch; and (7) "Hana Ranch never obtained any easements, leases, licenses, rights-of-way, or

---

[1] There are 19 lots in the Aina O Kipahulu Subdivision.

other rights permitting it to construct and maintain the off-site portion of the water system on parcels of land belonging to others." *Id.*

Count I of the complaint charges Hana Ranch with breach of its representation and promise regarding the availability of domestic water by reserving to itself an unconditional right to divert water from the system and by its failure to obtain easements for the off-site portion of the water system. Count II alleges that employees of Hana Ranch, as officers of the Association, accepted transfer of the water system to the Association without corresponding off-site easements, and thereby breached their fiduciary duties as officers of the Association. Count III charges Hana Ranch for breach of the Agreement in failing to obtain and transfer off-site easements. Count IV alleges that Hana Ranch's failure to obtain and transfer off-site easements constitutes a breach of its obligations under Maui County's subdivision ordinances and regulations. Count V seeks a declaratory judgment regarding the Association's and Hana Ranch's "rights and obligations as to the availability of water and the off-site portion of the water system." *Id.* at 12. Count VI contains a general allegation that "Hana Ranch has failed to perform other promises made to members of the Association[.]" *Id.* at 13.

On October 4, 1978, Hana Ranch served and filed its answer. Thereafter, the parties engaged in discovery activities. Hana Ranch, however, also endeavored to obtain easements for the off-site portion of the water system.[2] Between 1979 and 1984, both inclusive, easements were obtained from the State of Hawaii, The Nature Conservancy, and the United States;[3] and Hana Ranch re-

---

[2] In an affidavit dated December 30, 1983, counsel for plaintiff Aina O Kipahulu Association stated:

> b. The major issue for this trial concerns the alleged obligation of the Defendant, HANA RANCH, to provide easements for the Plaintiff's water pipeline system. Without conceding that it is obligated to do so, HANA RANCH has, over the last several years, been in the process of obtaining the easements Plaintiff seeks. It is my opinion that, given more time and continued cooperation between Plaintiff and Defendant, the parties may be able to obtain the remaining easements, which would more than likely make a trial unnecessary.

Record, Vol. 1 at 133.

[3] The easement from the United States was non-exclusive and revocable.

leased its right to divert water that it had reserved in the Agreement. However, regarding a certain parcel of land owned by The Nature Conservancy (85%) and Mary B. Drummond and Mildred C. Drummond (collectively the Drummonds) (15%), this court held that Hana Ranch did not acquire a prescriptive easement as to the Drummonds' interest. *The Nature Conservancy v. Nakila,* 4 Haw. App. 584, 671 P.2d 1025 (1983).

In September 1985, the Association and Hana Ranch agreed to a settlement. Under the settlement agreement, the Association would dismiss the case with prejudice, and Hana Ranch would give the Association an indemnification. Specifically, Hana Ranch agreed to defend any action brought by the Drummonds involving the off-site portion of the water system and indemnify the Association, in an amount not to exceed $300,000, for any loss or liability resulting from such action. The settlement was subject to a condition that all members of the Association sign and deliver releases to Hana Ranch.

In December 1985, the Association reported that two members, Kest and Michael Palazzolo (Palazzolo), refused to sign releases. Thereupon, on January 14, 1986, Hana Ranch obtained a court order joining Kest and Palazzolo as involuntary plaintiffs in the case. After service of summons against them, both Kest and Palazzolo filed their respective complaints against Hana Ranch.[4] Kest's complaint, filed on April 30, 1986, adopts the Association's original complaint. It also alleges claims for damages arising from defective design and construction of the water system and defective construction of the Subdivision roads. Hana Ranch answered Kest's complaint, interposing, *inter alia,* an affirmative defense of the statute of limitations.

In the interim, on April 18, 1986, the Association moved to dismiss its original complaint with prejudice. The circuit court granted the Association's motion on May 12, 1986.

On February 25, 1987, Hana Ranch moved for summary judgment on Kest's claims alleging defective construction of the water

---

[4] On February 8, 1989, Michael Palazzolo filed a stipulation dismissing all of his claims with prejudice. Consequently, he is not involved in the appeal and will not be referred to in this opinion hereafter.

system and Subdivision roads on the ground that those claims were time-barred. On April 30, 1987, the circuit court granted the motion.

On April 17, 1989, when the case was called for trial, Kest waived all remaining claims he had asserted against Hana Ranch. Consequently, on May 4, 1989, the court entered a final judgment in favor of Hana Ranch. Kest then timely appealed the adverse summary judgment adjudicating the defective construction claims.

## II.

Hana Ranch completed the Subdivision improvements in 1973. Kest filed his complaint against Hana Ranch in 1986, alleging, *inter alia,* claims for defective construction of the water system and roads. Applying a ten-year limitation under Hawaii Revised Statutes § 657-8 (1985),[5] Hana Ranch contends that those claims are time-barred. Kest counters by arguing that pursuant to HRCP Rule 15(c), those claims "relate back" to September 18, 1978, the date when the Association filed its original complaint, and, therefore, the claims are not time-barred.

Based on our analysis of HRCP Rule 15(c) and review of the pleadings, we conclude that Kest's claims for defective construction of the water system and roads do not "relate back" to the original complaint. Therefore, the statute of limitations has run on those claims.

---

[5] Hawaii Revised Statutes § 657-8 (1985) provides in pertinent part:

Limitation of action for damages based on construction to improve real property. No action to recover damages for any injury to property, real or personal, arising out of any deficiency or neglect in the planning, design, suretyship, manufacturing and supplying of materials, construction, supervision and administering of construction, and observation of construction relating to an improvement to real property shall be commenced more than two years after the cause of action has accrued, but in any event not more than ten years after the date of completion of the improvement.

## A.

HRCP Rule 15(c) provides as follows:

> (c) **Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

This rule is virtually identical to the analogous paragraph of Rule 15(c) of the Federal Rules of Civil Procedure (FRCP). Consequently, we will consider pertinent federal decisions interpreting FRCP Rule 15(c), since they are deemed "to be highly persuasive" in the construction of our Rule 15(c). *Ellis v. Crockett*, 51 Haw. 45, 61, 451 P.2d 814, 824 (1969).

## B.

HRCP Rule 15(c) explicitly permits amendments that change parties against whom claims are asserted to relate back to the date of the original pleading. The rule, however, does not expressly apply to pleadings adding defendants and substituting or adding plaintiffs. Under FRCP Rule 15(c), the word "changing" has been "given a sensible and practical construction" to permit the adding of defendants. *Meredith v. United Air Lines*, 41 F.R.D. 34, 39 (S.D. Cal. 1966). *See also Gridley v. Sayre & Fisher Co.*, 409 F. Supp. 1266 (D.S.D. 1976) (relation-back rule applied where a defendant was added when the original complaint was amended); 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1498 (1971). Likewise, Rule 15(c) "applies by analogy to the substitution of plaintiffs." *Raynor Bros. v. American Cyanimid Co.*, 695 F.2d 382, 384 (9th

Cir. 1982). *See also Allied Int'l, Inc. v. International Longshoremen's Ass'n,* 814 F.2d 32, 35-36 (lst Cir. 1987); 6 C. Wright & A. Miller, *supra,* § 1501.

Rule 15(c) has been deemed applicable where a plaintiff of record adds a person as a party plaintiff. *Cunningham v. Quaker Oats Co.,* 107 F.R.D. 66 (W.D. N.Y. 1985). Our research has not disclosed a Rule 15(c) case where the defendant added a person as an involuntary party plaintiff. By analogy, however, Kest, as an involuntary plaintiff, should also be allowed to use the Rule 15(c) relation-back rule to preserve his claims against Hana Ranch.

C.

When confronted with amendments that add plaintiffs with new claims, courts can protect defendants from the perils statutes of limitations are enacted to prevent while effectuating the policies of rule 15(c) by applying a two-step analysis. First, courts should broadly inquire whether the additional plaintiff's claim arose from the conduct, transaction, or occurrence that gave rise to the original plaintiff's claim. Second, the court should determine whether the facts alleged in the original pleading gave the defendant notice of a reasonable likelihood that the added plaintiff might later assert a claim. If the defendant received such notice, the amendment should be allowed to relate back because it is not prejudicial.

Note, *Amendments That Add Plaintiffs Under Federal Rule of Civil Procedure 15(c),* 50 Geo. Wash. L. Rev. 671, 687 (1982).

Professors Wright and Miller have stressed the notice requirement stating:

Because the rationale of the relation back rule is to ameliorate the effect of the statute of limitations, rather than to promote the joinder of claims and parties, the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test; although not expressly mentioned in the rule, the courts also inquire into *whether the opposing party has been put on notice* regarding the claim or defense raised by the amended pleading. Only if the original pleading has performed that function, which typically will be

the case if the letter of the test set forth in Rule 15(c) is satisfied, *will the amendment be allowed to relate back to prevent the running of the limitations period in the interim from barring the claim or defense.*

6 C. Wright & A. Miller, *supra* § 1497 at 495-96 (footnotes omitted) (emphasis added). A federal court of appeals has declared that "the crucial policy underlying [FRCP Rule 15(c)] is notice to the party opposing the amendment." *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1308 (D.C. Cir. 1982).

We apply the foregoing precepts in determining whether the claims included in Kest's complaint (which qualifies under Rule 15(c) as an amended pleading) relate back to the date of the Association's original complaint.

1.

The initial question is whether Kest's claims alleging Hana Ranch's defective construction of the water system and Subdivision roads "arose out of the conduct, transaction, or occurrence" set forth in the Association's original complaint. A broad or liberal inquiry, as required by the federal authorities, leads us to conclude that the alleged defective construction of the water system, but not of the Subdivision roads, arose from the transaction or occurrence set forth in the original complaint.[6]

The original complaint alleges facts relating to the water system of the Subdivision. It specifically alleges that "Hana Ranch constructed an on-site and off-site water supply system . . . for the purpose of providing domestic water to lots within the Subdivision." Record, Vol. 1 at 6. Based on a broad or liberal construction, it is reasonable to conclude that Kest's claim that Hana Ranch defectively constructed the water system arose out of the occurrence

---

[6] We are aware of the supreme court's statement that "under [Rule] 15(c) any amendment requiring additional evidentiary proof which was not reasonably foreseeable from the earlier pleadings should be deemed to contain a new occurrence." *Mauian Hotel, Inc. v. Maui Pineapple Co.*, 52 Haw. 563, 568, 481 P.2d 310, 314 (1971). We deem that statement to be applicable to the notice aspect, rather than the "conduct, transaction, or occurrence" aspect, of the Rule 15(c) inquiry.

of Hana Ranch's construction of the water supply system set forth in the original complaint.

However, we are unable to perceive how Kest's claim that Hana Ranch defectively constructed the Subdivision roads arose out of the occurrence of construction of the water supply system set forth in the original complaint.

2.

The next question we must answer is whether the facts alleged in the Association's original complaint put Hana Ranch on notice of a possible water system construction defect claim, which Kest later asserted. We conclude that Hana Ranch was not put on notice of such a claim.

A careful reading of the Association's complaint indicates that its focus was on the source and delivery of domestic water from outside of the Subdivision to the lots within the Subdivision. Thus, the Association complained that Hana Ranch improperly reserved an unconditional right to divert water and failed to obtain and transfer to the Association easements for the off-site portion of the water system. The complaint does not include any allegations relating to the design and construction of the water system, other than a bare allegation that Hana Ranch "constructed an on-site and off-site water supply system" for the Subdivision. Consequently, the Association's complaint did not reasonably put Hana Ranch on notice of a claim for damages for defective construction of the water system.

Kest argues, however, that the allegation in Count VI of the complaint that Hana Ranch "failed to perform other promises" gave it notice of possible construction defect claims concerning the water system. We disagree.

As previously indicated, the Association structured its complaint with eleven introductory paragraphs preceding the six counts. The material allegations in the introductory paragraphs are limited in their scope to the facts that (1) water had been shut-off on two occasions, (2) the off-site portion of the water system lies on land not owned by Hana Ranch, (3) Hana Ranch has failed to obtain appropriate easements for the off-site portion of the water system, and (4) there are two pending quiet title actions which may

affect the off-site portion of the water system. The complaint then alleges claims based on Hana Ranch's reservation of an unconditional right to divert water and its failure to obtain and transfer easements for the off-site portion of the water system in the first five counts. In our view, Count VI's allegation, that Hana Ranch "failed to perform other promises," is a catchall allegation that includes all other breaches of promises relating to Hana Ranch's reservation of right to divert water and easements for the off-site portion of the water system, not included in the first five counts.

Moreover, in the Association's discovery undertakings, including the taking of depositions, construction problems were never addressed or brought into issue, and questions were never asked concerning construction of the water system. Also, as indicated in footnote 2, *supra*, the Association's position was that *the* issue in the case was the alleged obligation of Hana Ranch to provide easements for the water pipeline system.

Accordingly, the Association's original complaint did not put Hana Ranch on notice of Kest's claim for defective construction of the water system.

### III.

We hold that involuntary additional plaintiff Kest's damage claims against Hana Ranch for defective construction of the water system and Subdivision roads did not relate back to the date of filing of the Association's original complaint. Therefore, the statute of limitations has run on those claims.

The judgment below is affirmed.

*Douglas J. Sameshima* on the briefs for involuntary plaintiff-appellant.

*William F. Crockett (Crockett & Nakamura,* of counsel) on the brief for defendant-appellee.