Tom **HEISER**, et al., Plaintiffs,

v.

**ASSOCIATION OF APARTMENT OWNERS OF POLO BEACH CLUB**, et al., Defendants.

Civ. No. 92–00331 ACK.

United States District Court,
D. Hawaii.

July 20, 1993.

James Krueger and Peter T. Cahill, Krueger & Cahill, Wailuku, Maui, HI, for Tom Heiser, Nancy Heiser, Mark Daniel Heiser, and Nicholas Edward Heiser.

John T. Komeiji, Watanabe Ing & Kawashima, Honolulu, HI, for Association of Apartment Owners of the Polo Beach Club.

Shelton G.W. Jim On and Henry F. Beerman, Jim On & Beerman, Honolulu, HI, for Destination Resorts Management, Inc.

Deborah K. Wright and Keith D. Kirschbraun, Wright & Kirschbraun, Wailuku, Maui, HI, for Morris Aaron Lauterman and Judith Lee Lauterman.

*ORDER DENYING DEFENDANT DESTINATION RESORTS MANAGEMENT, INC.'S MOTION TO DISMISS, DENYING DEFENDANTS MORRIS AND JUDITH LEE LAUTERMAN'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION PURSUANT TO FED.R.CIV.P. 41(a)(2) DISMISSING DEFENDANTS MORRIS AND JUDITH LEE LAUTERMAN*

KAY, Chief Judge.

## I. BACKGROUND

Plaintiff Dr. Tom Heiser (Heiser), while vacationing at a condominium at Wailea/Makena, Maui, was injured during a boogie-boarding accident on June 6, 1990. The injury left Heiser a quadriplegic.

Heiser initially attempted to reach a settlement with State Farm Insurance, insurer of Defendant Association of Apartment Owners of the Polo Beach Club (Association). However, on May 27, 1992, just prior to the expiration of the statute of limitations, Heiser and his family (Plaintiffs) filed a complaint alleging a negligence theory of recovery against three defendants: Defendant Association, Defendant Destination Resorts Management., Inc. (Destination), and the party thought to be the owner of the condominium in which Plaintiffs had been staying at the time of the accident. Specifically, Plaintiffs alleged that Defendants had a duty to warn Plaintiffs of dangerous wave conditions that existed on the beach adjacent to the condominium complex. Jurisdiction was based on this Court's diversity jurisdiction.

After the complaint was filed, Plaintiffs did not immediately attempt to have any of Defendants served with process. Plaintiffs, instead, pursued settlement negotiations with Defendant Association. Heiser also sought additional medical examinations during this period.

As the Fed.R.Civ.P. 4(j) time period for service advanced, Plaintiffs filed an *ex parte* motion seeking an additional 90 days in which to serve Defendants. The magistrate granted this *ex parte* motion on August 12, 1992.

Subsequent to the magistrate's order, settlement discussions continued. Plaintiffs, however, learned that they had named the wrong party as owner of the condominium. Accordingly, rather than serve the original, incorrect complaint, Plaintiffs filed an amended complaint on September 18, 1992 which named as defendants Morris and Judith Lee Lauterman (the Lautermans), the true owners of the condominium. The First Amended Complaint was served on all Defendants on or about October 30, 1992.

Defendant Destination has moved to dismiss the complaint on statute of limitations grounds; the Lautermans seek summary judgment on similar grounds. Plaintiffs have opposed Destination's motion to dismiss, but do not oppose the Lautermans' motion for summary judgment.

The nonmoving Defendants have filed position papers addressing both motions. The nonmoving Defendants do not oppose the motions as they relate to Plaintiffs, but assert that the motions should not be deemed to have any effect on the various cross-claims that exist between all Defendants. Because those cross-claims are not before the Court on motion, those issues will not be addressed.

## II. DISCUSSION

### A. Defendant Destination's Motion to Dismiss

■ In diversity actions, federal courts generally apply state statutes related to the commencement and tolling of statutes of limitations. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 745–46, 100 S.Ct. 1978, 1982–83, 64 L.Ed.2d 659 (1980). Defendant Destination Resorts Mgmt., Inc. relies on Haw.Rev. Stat. § 657–22 (1988) to argue that Plaintiffs' complaint should be dismissed, as it pertains to Defendant Destination, for failure to comply with Hawaii's statute of limitations.

The State of Hawaii has legislated that actions in tort "shall be instituted within two years after the cause of action accrued...." Haw.Rev.Stat. § 657–7 (1988). A civil action is commenced or instituted by filing a complaint with the court. Haw.R.Civ.P. 3. However, in some circumstances the mere filing of a complaint will not toll the statute of limitations:

> Upon any such matter being established, or upon its appearance in any other way that any process was issued without any intent that it should be served, the process shall not be deemed the commencement of an action within the meaning of this part or section 663–3.

Haw.Rev.Stat. § 657–22 (1988). In other words, the statute of limitations will not be tolled merely by filing a complaint if the plaintiff has no intent to serve process.

Defendant Destination maintains that Haw.Rev.Stat. § 657–22 mandates that Plaintiffs' First Amended Complaint be dismissed on the grounds that Plaintiffs did not commence the action within the limitations period because Plaintiffs did not have the intent to serve the original complaint. Defendant Destination points to the fact that Plaintiffs never had the original complaint, the only complaint filed within the limitations period, served on Destination. Plaintiffs had only the First Amended Complaint served. Destination contends that the failure to serve the original complaint evidences that Plaintiffs had no intent to serve the complaint.

No Hawaii court has interpreted Haw.Rev. Stat. § 657–22. It was enacted in 1850. Additionally, Destination concedes that no other state has a statute that is similar to § 657–22.

Instead, Destination relies on analogous case law from other states. In Texas, for instance, courts have held that a plaintiff must not only file suit but also use due diligence in procuring service on the defendant in order to toll the statute of limitations. *See, e.g., Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990); *Rigo Manuf. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex.1970); *Saenz v. Keller Indus. of Texas, Inc.*, 951 F.2d 665, 667 (5th Cir.1992).

Similarly, the courts of other states have held that an action is not commenced, and, thus, the statute of limitations is not tolled, until the summons is in the hands of a sheriff or other person authorized to serve it. *See, e.g., DeBoer v. Fattor*, 72 Nev. 316, 304 P.2d 958, 959–60 (1956). Yet other states have statutorily provided that an action is not "commenced" until the complaint is *both* filed with the court *and* served on the defendants. *See, e.g., Walker*, 446 U.S. at 742–43, 100 S.Ct. at 1981 (interpreting Okla.Stat. tit. 12, § 97 (1971)). Defendant Destination would extend some form of any of these interpretations to Haw.Rev.Stat. § 657–22.

The difficulty with Destination's argument is that in all of the above cited cases, the courts were merely applying some longstanding policy or statute which governed the tolling of the statute of limitations. Defendant would have this Court import any of those other rulings into an interpretation of the Hawaii statute of limitations, something that Hawaii courts have not done. There are two reasons why this is questionable.

First, Plaintiffs have complied with the literal requirements of the Hawaii statute of

limitations and rules of procedure. Plaintiffs filed a complaint with this Court within two years after their tort action accrued. This complies with Haw.Rev.Stat. § 657–7 and Haw.R.Civ.P. 3.

Second, § 657–22 does not require a plaintiff to actually serve the defendant or to exercise due diligence. Instead, the threshold inquiry is a determination of the plaintiff's intent at the time "any process was issued." The legislature, by limiting the inquiry to the time of issuance of process, apparently recognized the possibility that the intent of a plaintiff to serve process may change after process is issued but that under some circumstances there may still be justification for tolling the statute of limitations.

While a due diligence requirement might be logical and even desirable, one has not been divined from the statute; no court has even interpreted the statute and the legislative history of the statute provides nothing of value. Accordingly, there is no state authority which would allow this Court to import such an interpretation into Hawaii limitations law.

Destination relies on a number of the cases cited above, as well as *Louisville & N.R. Co. v. Little,* 264 Ky. 579, 95 S.W.2d 253 (1936). In *Little,* the plaintiff's attorney filed a complaint a few days prior to the expiration of the statute of limitations. The plaintiff's attorney received process from the clerk of the court, which he proceeded to place in his filing cabinet. It was nearly two months before the attorney took the process papers to the sheriff in order to have the papers served. The defendant challenged the action on statute of limitations grounds.

The *Little* court found that despite the existence of a statute which stated that a case was commenced by filing a petition, there existed a requirement of good faith intent to have the petition served. The court held that while the "taking out of summons is presumptive evidence of an intention to have it served in due course," the presumption could be rebutted. 95 S.W.2d at 255. The court looked at the actions (or inaction) of the plaintiff's attorney and determined that there was no evidence of good faith intent. It dismissed the complaint.

The *Little* case is most closely analogous to Haw.Rev.Stat. § 657–22. However, the case is yet another example of a state court applying a longstanding interpretation of that state's courts. No such longstanding interpretation exists in Hawaii.

Furthermore, *Little* is distinguishable on the ground that in that case the plaintiff's attorney acted in such a way as to evidence an intent not to pursue the action. The attorney put the complaint and summons in a drawer for two months and apparently did nothing.

Here, Plaintiffs' attorney filed the complaint. Subsequent to such filing, Plaintiffs were actively involved in attempts to settle the case, establishing the identity of the true owners of the condominium in which they stayed, amending the complaint, and obtaining an extension of time in which to serve process.

All of these activities evidence an intent on the part of Plaintiffs to pursue their claims. Settlement negotiations should be encouraged as an alternative to lengthy, costly litigation. Therefore, the mere fact that a plaintiff takes time to attempt to negotiate a settlement before serving process should not be taken as evidence of lack of intent to serve process or to pursue an action. Similarly, the fact that a plaintiff amends a complaint prior to serving the complaint, with the effect of preventing needless filings by parties who will be dismissed from the action, should not be regarded as evidence of a lack of intent to serve process.

In this case, Plaintiffs filed their complaint within two years after their cause of action accrued, as required by law. Despite the fact that the original complaint was never served, the actions by Plaintiffs evidence both an intent to serve the original complaint as well as a continuing intent to pursue their cause of action. Accordingly, this Court denies Defendant Destination Resort Management, Inc.'s motion to dismiss.

**B. Defendants Morris and Judith Lee Lauterman's Motion for Summary Judgment**

**1. *Standard for Summary Judgment***

■ Summary judgment shall be granted where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, " '*specific facts* showing that there is a genuine issue for trial.' " *Id.* (quoting Fed. R.Civ.P. 56(e)) (emphasis in original). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct.

2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing, *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services*, 809 F.2d at 630–31.

### 2. *Application*

The Lautermans have moved for summary judgment on the basis of Haw.R.Civ.P. 15(c) and Fed.R.Civ.P. 15(c). Specifically, the Lautermans argue that because they were not named in the original complaint, it was only proper to add them as Defendants in the First Amended Complaint if the requirements of either Hawaii or federal Rule 15(c) were met. The Lautermans assert that those requirements were not met, warranting a grant of summary judgment[1] in their favor.

---

1. There is no clear authority regarding whether this motion is more accurately treated as a motion to dismiss or as a motion for summary judgment. Some courts have treated a Rule 15(c) motion as a motion to dismiss, while others have termed such a motion as one for summary

judgment. *Compare, Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986) (treating as motion to dismiss); *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543 (5th Cir. 1992) (motion to dismiss); *Miles v. Dept. of Army*, 881 F.2d 777 (9th Cir.1989) (motion to

As an initial matter, it is necessary to determine whether Haw.R.Civ.P. 15(c) or Fed.R.Civ.P. 15(c) applies in the instant case. In diversity cases, as discussed above, state law applies on questions related to statutes of limitations. However, authorities contend that the federal rule will generally apply in determining whether an amendment to a complaint will relate back to the original filing. *See, e.g.,* 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1503 (1986).

This is confirmed by Ninth Circuit case law. In *Santana v. Holiday Inns, Inc.,* 686 F.2d 736, 740 (9th Cir.1982), the court was forced to determine whether Fed.R.Civ.P. 15(c) or a contrary state rule governed amendments. The court relied on the Supreme Court's decision in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), to hold that the federal rule applied.

Therefore, Fed.R.Civ.P. 15(c) applies in the case at bar. That rule states, in relevant part:

An amendment of a pleading relates back to the date of the original pleading when:

. . . .

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received

such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).[2]

"The *raison d'etre* for relation back is that the opposing party is already on notice of the action and hence no prejudice results...." *Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th Cir.1988) (emphasis in original). The Fifth Circuit is one of the few courts to interpret Rule 15(c) since the time of its amendment in 1991. *See Skoczylas,* 961 F.2d at 545. The *Skoczylas* court summed up the rule by stating that "relation back is allowed as long as the added party had notice within 120 days following the filing of the complaint, or longer if good cause is shown." *Id.* Additionally, the Advisory Committee notes to the 1991 Amendment state that Fed.R.Civ.P. 15(c) "allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court...."

This approach is consistent with the intent of the drafters to avoid the situation created by the Supreme Court's interpretation of the previous version of Rule 15(c). In *Schiavone v. Fortune,* 477 U.S. 21, the Court held that a party had to be changed pursuant to Rule 15(c) prior to the expiration of the statute of limitations, even if the time period for service of process had not yet run. The result was that a party who was added had to be served with the *amended* complaint within the limi-

---

dismiss) with *Santana v. Holiday Inns, Inc.,* 686 F.2d 736 (9th Cir.1982) (summary judgment motion); *Kest v. Hana Ranch, Inc.,* 7 Haw.App. 565, 785 P.2d 1325 (1990) (summary judgment motion). However, none of these cases illuminates the inquiry by discussing the reasons for treating the motion as one opposed to the other. Indeed, the choice is probably only important in an academic sense because the outcome will not change. In the instant case, because the motion is framed as a motion for summary judgment and because the relation back test set out under Rule 15(c) requires the Court to venture outside of the pleadings, the motion will be treated as one for summary judgment.

2. Hawaii R.Civ.P. 15(c) is nearly identical to the pre–1991 version of Fed.R.Civ.P. 15(c) and is slightly more restrictive than the current federal rule because it requires that the added party must have had notice within the limitations period, not the limitations period plus Fed.R.Civ.P. 4(j) service period as is currently the rule. In diversity cases, where the district court is faced with a choice between the federal rule and a more restrictive state rule of relation back, the question should "be governed by ... federal principles emanating from the federal rule." 6A Wright, et al., Federal Practice and Procedure, § 1503 at 173.

tations period while a defendant who was not changed did not even have to be served with the original complaint until 120 days or more after the expiration of the statute of limitations. *See Diaz v. Shallbetter*, 984 F.2d 850, 852 (7th Cir.1993). Rule 15(c) was specifically amended to avoid this anomaly. *Skoczylas*, 961 F.2d at 544–545.

In the case at bar, there is no question that the First Amended Complaint arose out of "the conduct, transaction, or occurrence" set forth in the original complaint. Instead, the issues raised by the Lautermans relate to whether they had notice of the action within 120 days following the filing of the original complaint.

The Lautermans contend that they were not served within 120 days after the filing of the original complaint. This appears to be undisputed. The undisputed evidence is that the Lautermans were served in late October 1992, as were all other Defendants. However, this fact does not preclude relating the amended complaint back to the original filing date because there was good cause for the failure to serve within 120 days. On August 12, 1992, the magistrate granted Plaintiffs a 90 day extension in which to serve the original complaint. *See* Krueger Affidavit ¶ 6 at 3. The 90 day extension would have expired on approximately December 22, 1992.

The amended complaint was served prior to that date. The extension of time within which to serve process would constitute good cause for failing to serve the original complaint within 120 days, as would the ongoing settlement negotiations.

Therefore, the Lautermans were served with the First Amended Complaint within the period provided for by Fed.R.Civ.P. 4(j) for service of the summons and complaint, and accordingly received "such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits." *See* Fed.R.Civ.P. 15(c). Additionally, within the same Rule 4(j) period, the Lautermans, by receiving a copy of the amended complaint, were made aware that but for a mistake concerning the identity of the proper party, the action would have been brought against them.

This case is different than the type of case to which Rule 15(c) is often applied. In *Schiavone*, the plaintiffs named Fortune Magazine as the defendant. Time, Inc. was the proper party because it published Fortune. The pleadings were sent to Time, Inc.'s headquarters but were not received until after the expiration of the limitations period, but still within the period for service of process. Despite the clear notice to Time, Inc., the Court held that there was no relation back because there was not notice to Time, Inc. within the limitations period.

Rule 15(c) would now allow the amendment in *Schiavone*. Here, the Rule 4(j) period, as extended by the Magistrate, had not expired so the Lautermans received the amended complaint and notice of the mistake prior to the end of the Rule 4(j) period for serving the original complaint. Rule 15(c) would clearly allow this. Therefore, this Court denies Defendants Morris and Judith Lee Lauterman's motion for summary judgment against Plaintiffs.

 The question then becomes how Plaintiffs may dismiss the Lautermans from the case. An attempted stipulation has already been rejected because, presumably, as set out in the position papers filed by the Association and Destination, the nonmoving Defendants are concerned about the effect that a dismissal would have on their cross-claims against the Lautermans.

The Court allowed Plaintiffs to dismiss the Lautermans in open court pursuant to Fed.R.Civ.P. 41(a)(2). That rule provides, in relevant part:

> [A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.

The rule gives this Court the discretion to allow Plaintiffs to dismiss the Lautermans with the limitation that the cross-claims which have been filed against the Lautermans will remain unaffected. This satisfied the nonmoving Defendants because it protects their interests in the event that any liability to Plaintiffs ultimately attaches. "[C]ourts have generally followed the traditional principle that dismissal should be al-

lowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." 9 Charles Alan Wright, et al., Federal Practice and Procedure § 2364 at 165 (citing *In re International Airport Inn Partnership,* 517 F.2d 510, 512 (9th Cir.1975)).

### III. CONCLUSION

This Court, having read the memoranda of the parties and having heard the arguments of counsel, denies Defendant Destination Resorts Management, Inc.'s motion to dismiss and Defendants Morris and Judith Lee Lauterman's motion for summary judgment, and grants Plaintiff's motion pursuant to Fed. R.Civ.P. 41(a)(2) dismissing Defendants Morris and Judith Lee Lauterman.

IT IS SO ORDERED.